[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15017

_____

D.C. Docket No. 3:03-cv-00397-TJC-JRK

FLOYD DAMREN,

Petitioner - Appellant,

versus

STATE OF FLORIDA,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 21, 2015)

Before ED CARNES, Chief Judge, and TJOFLAT and HULL, Circuit Judges.

PER CURIAM:

Floyd Damren, a Florida capital inmate, appeals the dismissal of his petition

for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The District Court

found that his petition was not filed within the one-year limitations period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Damren argues that the District Court erred in failing to find the limitations period equitably tolled because his untimely filing was due to his attorney's failure to ascertain the deadline by which his petition was due.  We disagree.  Equitable tolling is appropriate only where, despite diligent pursuit of his rights, some extraordinary circumstance prevents a petitioner from timely filing his petition.  Because Damren's attorney's negligence is not so extraordinary as to merit equitable tolling, we affirm the District Court's judgment.

## I.

One evening in May 1994, Don Miller made the mistake of interrupting Damren and an accomplice, Jeff Chittam, while they were burglarizing Miller's place of work.  Damren managed to sneak up behind Miller and beat him to death with a metal pipe.  Damren was thereafter apprehended and indicted for first-degree murder, armed burglary, and aggravated assault.[1]  A jury convicted him on

---

[1] Chittam was not charged; he was found beaten to death within days of the burglary. Damren pled guilty to Chittam's murder in a separate proceeding and received a life sentence. *See State v. Damren*, No. 95-1305-CF (Fla. Cir. Ct. Jan 17, 1996).

2

all counts[2] and unanimously recommended the imposition of a death sentence for the murder.  The court followed the jury's recommendation and sentenced Damren to death.  *Damren v. State*, 696 So. 2d 709, 710–11 (Fla. 1997) (detailing the facts of the crime, trial, and capital sentencing proceedings).

The Supreme Court of Florida affirmed Damren's conviction and sentence on direct review, *id.*, and the United States Supreme Court subsequently denied Damren's petition for a writ of certiorari on January 12, 1998, *Damren v. Florida*, 522 U.S. 1054, 118 S. Ct. 706, 139 L. Ed. 2d 648 (1998).  At that time, his convictions became final.  *See Clay v. United States*, 537 U.S. 522, 527, 123 S. Ct. 1072, 1076, 155 L. Ed. 2d 88 (2003).  This left Damren one year within which to file a federal habeas corpus petition.  *See* 28 U.S.C. § 2244(d)(1) (imposing a one-year limitation period on state prisoners who wish to file a federal habeas corpus petition and specifying that the period starts running, relevantly, on the date on which the state court judgment becomes final).

On November 9, 1998, three hundred days into the limitations period, Damren, through court-appointed postconviction counsel, Jeffrey Morrow, moved

---

[2] The evidence implicating Damren included eyewitness testimony by another employee, blood stains matching Miller's blood on Damren's pants, and testimony by several witnesses disclosing incriminating statements made by Damren.  *Damren v. State*, 696 So. 2d 709, 710 (Fla. 1997).

3

the trial court to vacate his conviction and sentence pursuant to Rule 3.851 of the Florida Rules of Criminal Procedure. This stopped the § 2244(d)(1) limitations-period clock. *See* 28 U.S.C. § 2244(d)(2) (providing that the limitations period does not run during the pendency of a properly filed motion for state postconviction review). The trial court conducted an evidentiary hearing on Damren's claims on April 10, 2001, and denied his Rule 3.851 motion on June 20, 2001. Damren appealed the decision to the Supreme Court of Florida and also petitioned that court for a writ of habeas corpus. On January 23, 2003, the Supreme Court of Florida affirmed the trial court's decision and denied his petition for a writ of habeas corpus. With the issuance of the mandate on February 24, 2003, that decision became final, and the one-year limitations period began running again. Damren's federal habeas petition thus had to be filed within sixty-five days, by April 30, 2003.

Although he had experience handling capital cases in the Florida courts, Morrow was not familiar with federal district court practice and had never handled a federal habeas petition. As Damren's Rule 3.851 proceedings drew to a close, Morrow met with Damren and explained that he was willing to continue representing Damren and petition the federal district court for a writ of habeas corpus. As he was unfamiliar with the rules and procedures in that court, however,

4

Morrow told Damren that he would need to find another attorney to assist him. Damren, trusting Morrow to handle his petition, agreed to the plan.

Morrow sought assistance from at least five different attorneys, on numerous occasions. However, he was unable to find any attorney who would be willing to join him as co-counsel in prosecuting Damren's federal habeas petition. Morrow was aware of the one-year limitations period for filing a federal habeas petition. He spoke with several attorneys about it but received conflicting advice about which events tolled the statute of limitations and how to calculate the exact deadline by which Damren's petition had to be filed. He "started to calculate [the deadline] several times," but was never able to "get an exact date figured out."

Sometime in the beginning of April 2003, Morrow attempted to petition the United States Supreme Court for a writ of certiorari to review the decision of the Florida Supreme Court denying Damren postconviction relief. Morrow was of the opinion that a pending petition for a writ of certiorari would continue to toll the limitations period, thus giving him more time to prepare and file Damren's federal habeas corpus petition. *But see Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir. 2000) (per curiam) (holding that the one-year limitations period is not tolled during the time a petition for a writ of certiorari to review the state court's denial of collateral relief is pending in the United States Supreme Court, or during the ninety-day period in which it could have been filed). Due to a labeling snafu in

5

Morrow's law office, however, Damren's petition was not received by the United States Supreme Court until several days after the filing deadline of April 23, 2003, and thus was not considered by that court.

On May 14, 2003, fourteen days after the one-year limitations period had expired, Morrow made his first filing on Damren's behalf in federal district court—a motion for leave to file a habeas petition *in forma pauperis*. Based, apparently, on the advice he had been given (by one or more of the attorneys he had consulted), Morrow believed that filing such a motion would suffice to toll the limitations period for filing a petition for a writ of habeas corpus. *But see Woodford v. Garceau*, 538 U.S. 202, 207–08, 123 S. Ct. 1398, 1402, 155 L. Ed. 2d 363 (2003) (holding that for AEDPA purposes, a federal habeas case begins with the filing of a petition for a writ of habeas corpus, as distinguished from other filings by the applicant). On November 24, 2003, Morrow filed Damren's petition for a writ of habeas corpus.

On November 3, 2004, the State moved the District Court for summary judgment on the ground that the Damren's petition was time-barred. The court consolidated Damren's case with two other habeas cases in which counsel appointed by a state court to represent a defendant prosecuting a Rule 3.851 motion had failed to timely file the defendant's federal habeas petition, and held a joint hearing on January 18, 2006, to explore the reasons for the late filings. In the

6

wake of that hearing, the District Court appointed John Mills to represent Damren and the other two petitioners for the purpose of addressing whether they were entitled to equitable tolling of the deadline based on the conduct of their appointed attorneys.  After considering Mills's arguments, the District Court found that Damren's petition was not timely filed and that he was not entitled to equitable tolling.  The court thus dismissed his petition.

The District Court subsequently granted Damren's motion for rehearing and after an evidentiary hearing—at which the court heard from both Damren and Morrow on the specific circumstances of the late filing—again dismissed the petition as untimely.  Damren appealed that dismissal, and we remanded his case for reconsideration in light of the United States Supreme Court's decision in *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). After receiving supplemental briefing on *Holland*'s effect, the District Court dismissed Damren's petition a third time, finding that Damren could not satisfy either prong of *Holland*'s two-part test for equitable tolling.  Damren filed a timely notice of appeal, and the District Court issued a certificate of appealability (a "COA") as to whether equitable tolling was appropriate under the circumstances of Damren's case.

7

II.

We review *de novo* a district court's decision to dismiss as untimely a petition for a writ of habeas corpus. *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008). However, we review the district court's underpinning factual determinations for clear error and will only disturb them if they lack substantial support in the record. *San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011).

We divide our discussion into two parts. First, we explain why we exercise our discretion to entertain and decide this appeal despite a defective certificate of appealability. Second, we explain why Damren is not entitled to equitable tolling.

A.

A prisoner who wishes to appeal a district court's dismissal of his petition for a writ of habeas corpus must first obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1). As we have previously explained at some length, we are generally not free to entertain such an appeal if the COA does not spell out one or more issues on which the petitioner has made a substantial showing of the denial of a constitutional right. *See Spencer v. United States*, No. 10-10676, 2014 WL 6234529, at *3–4 (11th Cir. Nov. 14, 2014) (en banc); *Bell v. Fla. Attorney Gen.*,

8

614 F.3d 1230, 1231–32 (11th Cir. 2010) (per curiam); *see also* 28 U.S.C. §§ 2253(c).[3]

This is so even when a district court dismisses a petition on procedural grounds without reaching the merits of the petitioner's constitutional claims. *Spencer*, 2014 WL 6234529, at *4; *see also Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000) ("When the district court denies a habeas petition on procedural grounds . . . a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

Here, the District Court issued a COA that identified a debatable *procedural* issue—whether equitable tolling was warranted under the circumstances of

---

[3] Section 2253(c) states, in relevant part:

(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . .

. . . .

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

Damren's case—but that did not specify the underlying *constitutional* issue or issues on which Damren had made a substantial showing of a denial of his rights, as required by § 2253(c)(3).  While this omission does not deprive us of jurisdiction, *Gonzalez v. Thaler*, ___ U.S. ___, ___, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012), we are reluctant to disregard the gatekeeping requirements Congress has set up.  That said, given the lengthy procedural journey of this case, which spans more than a decade and includes a prior appeal to this court,[4] and the parties' thorough briefing of the equitable tolling issue, we believe that the most efficient course is to reach the issue.  *See Spencer*, 2014 WL 6234529, at *3 (declining to vacate similarly deficient COA under comparable circumstances); *see also Gonzalez*, ___ U.S. at ___, 132 S. Ct. at 650 (explaining that the COA process prescribed by Congress in AEDPA was intended to increase the efficiency of the federal habeas review process).

---

[4] As noted *supra*, since the filing of his petition in November 2003, the District Court has considered and resolved Damren's arguments for equitable tolling on three separate occasions. Damren appealed the second dismissal to this court in 2009, and after full briefing but before oral argument, we remanded the case for reconsideration in light of the Supreme Court's decision regarding equitable tolling in *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010).  On remand, the District Court again held that equitable tolling did not apply, leading to the current appeal.

10

B.

The parties agree that Damren's petition was not filed within § 2244(d)(1)'s one-year statute of limitations.  The only dispute is whether equitable tolling applies under the circumstances of his case.  For the following reasons, we find that it does not.

When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling.  "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649, 130 S. Ct. at 2562 (quotation marks omitted).

"Because a lawyer is the agent of his client, a federal habeas petitioner—who does not have a constitutional right to counsel—is ordinarily bound by his attorney's errors, including a miscalculation or misinterpretation of a filing deadline."  *Cadet v. Fla. Dep't of Corr.*, 742 F.3d 473, 477–78 (11th Cir. 2014).  Run-of-the-mill claims of excusable neglect by an attorney, "such as a simple miscalculation that leads a lawyer to miss a filing deadline," do not constitute the kind of "extraordinary circumstance" that is necessary to merit equitable tolling.  *Holland*, 560 U.S. at 651–52, 130 S. Ct. at 2564 (quotation marks omitted).

11

Indeed, this court has recently held that attorney negligence, however egregious, will never qualify as an "extraordinary circumstance" unless the negligence rises to the level of actual or effective abandonment of the client.  *Cadet*, 742 F.3d at 481.

Damren contends that he satisfied the diligence prong of *Holland's* equitable tolling standard by directing Morrow to pursue all available postconviction relief—without disputing the District Court's finding that he did not personally take any other steps to ensure the timely filing of a federal habeas petition.  While this proposition is far from certain, we will assume without deciding that Damren was reasonably diligent in pursuing his rights.

As for *Holland*'s second prong, Damren asserts that Morrow's failure to ascertain and comply with the correct filing deadline was of such an egregious nature that it qualifies as an "extraordinary circumstance" and merits equitable tolling.[5]  Damren would have us distinguish Morrow's conduct—starting but failing to finish the calculation of the exact date the petition was due—from cases in which an attorney simply miscalculated a deadline, a circumstance which courts have uniformly found does not warrant equitable tolling.  *E.g.*, *Lawrence v.*

---

[5] Damren also posits that Florida's registry system for appointing postconviction counsel, by which Morrow was appointed, is systemically deficient, and that this also qualifies as an extraordinary circumstance.  This argument was not presented to the District Court and is not included in the COA.  As such, we decline to consider it.

12

*Florida*, 549 U.S. 327, 336–37, 127 S. Ct. 1079, 1085, 166 L. Ed. 2d 924 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling . . . .").

Regardless of whether it is more accurate to characterize Morrow's calculations as in*complete* or in*correct*, we do not think Morrow's failings were so egregious as to constructively sever the agency relationship between Morrow and Damren, thus excusing Damren from the bearing the risk of his attorney's mistake. *See Cadet*, 742 F.3d at 481 (holding that under "well-settled principles of agency law, . . . a petitioner bears the risk of attorney error unless his attorney has essentially abandoned him and thereby severed the principal-agent relationship" (citing *Maples v. Thomas*, ___ U.S. ___, ___, 132 S. Ct. 912, 922–23, 181 L. Ed. 2d 807) (2012)) (quotation marks omitted)); *see also Holland*, 560 U.S. at 657, 130 S. Ct. at 2567 (Alito, J., concurring) ("While *Lawrence* addressed an allegation of attorney miscalculation, its rationale fully applies to other forms of attorney negligence. Instead of miscalculating the filing deadline, for example, an attorney could . . . fail to do the requisite research to determine the applicable deadline. In any case, however, counsel's error would be constructively attributable to the client.").

As the District Court noted in analyzing Morrow's conduct, "[t]his is not a case . . . where Mr. Morrow abandoned his client or lied to him . . . [or] failed to

13

communicate with his client and keep him informed of the status of his case." Instead, the District Court found that Morrow did make some efforts to determine the limitations period by seeking advice from other attorneys; he simply failed to do enough research to arrive at the correct date.

After reviewing the record, we agree with the District Court's finding.[6] While Morrow's incomplete and inadequate attempts to ascertain the deadline by which to file Damren's petition clearly constitute negligent conduct, they do not rise to the level of the "extraordinary circumstances" required to equitably toll § 2244(d)(1)'s limitations period and excuse Damren's untimely filing.

## III.

We therefore AFFIRM the District Court's dismissal of Damren's § 2254 petition as time-barred.

SO ORDERED.

---

[6] Even if we did not, we cannot say that the District Court's factual finding constituted clear error.

14