WILLIAM PRYOR, Circuit Judge:
This appeal concerns whether a federal prisoner may relitigate an alleged misapplication of the advisory United States Sentencing Guidelines in a collateral attack on a final sentence. After he pleaded guilty to distributing cocaine and we affirmed the judgment against him, Kevin Spencer moved to vacate his sentence of imprisonment, 28 U.S.C. § 2255, for an alleged error in the application of the advisory guidelines. Spencer argues that an intervening decision of the Supreme Court, Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), makes clear that the district court and this Court erroneously classified him as a “career offender” based on a prior conviction for felony child abuse, which he argues is not a “crime of violence.” United States Sentencing Guidelines Manual § 4B1.1 (Nov. 2006). Spencer maintains that this alleged error represents a “fundamental defect which inherently results in a complete miscarriage of justice,” Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), that can be revisited on collateral review. We disagree.
Spencer cannot collaterally attack his sentence based on a misapplication of the advisory guidelines. Spencer’s sentence falls below the statutory maximum, and his prior conviction for felony child abuse has not been vacated. Spencer’s sentence was and remains lawful. We affirm the denial of Spencer’s motion to vacate his sentence.
I. BACKGROUND
A federal grand jury indicted Kevin Spencer for distributing cocaine base in 2006. See 21 U.S.C. § 841(a)(1), (b)(1)(C). Spencer pleaded guilty to that federal charge in 2007. Spencer’s plea came after repeated encounters with the criminal justice system.
Spencer had previously pleaded guilty to eight crimes committed between 2003 and 2006, and the State of Florida charged Spencer with other crimes during that period too. In November of 2003, Spencer was arrested for selling cocaine within 1000 feet of a school. Two months later, officers arrested Spencer after discovering cocaine, marijuana, and drug paraphernalia in his vehicle. Spencer pleaded guilty to both cocaine-related offenses on the same day. The trial court sentenced him to concurrent one-year sentences for those crimes, but the state did not prosecute the charges for possession of marijuana and drug paraphernalia. One month after his arrest for possession of drugs, officers arrested Spencer for driving without a license. He pleaded guilty, and the court sentenced him to 16 days in jail. Less than six months later, Spencer engaged in sexual intercourse with a 14-year-old girl. He pleaded guilty to felony child abuse and received a one-year sentence for that crime. Then in March of 2005, officers arrested Spencer for driving without a valid license and possession of marijuana and drug paraphernalia. The state did not prosecute the drug charges, and Spencer pleaded guilty to driving without a valid license. One month later, officers arrested Spencer for possession of cocaine and re *1136 sisting an officer. Spencer pleaded guilty, and the court sentenced him to four months in jail for possession of cocaine. The state did not prosecute the other charge. Eight months later, officers arrested Spencer for drug possession and trespassing on posted property. The state dropped the charges for drug possession, but Spencer pleaded guilty to the trespassing charge. And in 2006, Spencer pleaded guilty to curb drinking.
Based on Spencer’s prior convictions for selling cocaine and felony child abuse, the district court concluded that Spencer was a career offender under the guidelines, U.S.S.G. § 4B1.1, and sentenced him to 151 months of imprisonment. The guidelines define a career offender as having at least two prior felony convictions for crimes of violence or controlled substance offenses. Id. A “crime of violence” is any crime punishable by a term of more than one year of imprisonment that either “has as an element the use, attempted use, or threatened use of physical force against the person of another,” or “is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” Id. § 4B1.2(a)-(b).
Spencer argued that his prior conviction for felony child abuse is not a “crime of violence.” When he was 18 years old, Spencer engaged in sexual intercourse with a 14-year-old female victim. The state charged him with lewd or lascivious battery, see Fla. Stat. § 800.04(4) (2004), but he pleaded guilty to a lesser offense of third-degree felony child abuse. He admitted during the plea colloquy that he had “engage[d] in sexual activity with a minor,” which “could reasonably cause physical or mental injury to that child.” Under Florida law, when an offender “knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child,” the offender commits third-degree felony child abuse. Id. § 827.03(2)(c). “Child abuse” under Florida law includes “[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child.” Id. § 827.03(l)(b)(2).
In Spencer’s direct appeal, we rejected his argument that the district court erroneously sentenced him as a career offender, and we affirmed his sentence. Spencer v. United States, 271 Fed.Appx. 977, 978-79 (11th Cir.2008). We relied on prior panel precedent that sexual offenses against minors are crimes- of violence, see, e.g., United States v. Ivory, 475 F.3d 1232, 1238 (11th Cir.2007), abrogated by United States v. Owens, 672 F.3d 966 (11th Cir.2012), and we ruled that Spencer’s conviction for felony child abuse was a crime of violence because it “involved a serious potential risk of physical injury to another.” Spencer, 271 Fed.Appx. at 979.
Two weeks later, the Supreme Court decided Begay, which prompted Spencer to move to vacate his sentence, 28 U.S.C. § 2255. The Supreme Court held that driving under the influence of alcohol was not a “violent felony” under the Armed Career Criminal Act because it did not involve purposeful, violent, or aggressive conduct and was not similar to burglary, arson, extortion, or crimes involving explosives. Begay, 553 U.S. at 145, 148, 128 S.Ct. at 1588; see also Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 2275, 180 L.Ed.2d 60 (2011) (declining to extend Begay to vehicle flight). Because the career-offender provision of the guidelines uses language nearly identical to the definition of “violent felony’ in the Armed Career Criminal Act, see James v. United States, 550 U.S. 192, 206, 127 S.Ct. 1586, 1596, 167 L.Ed.2d 532 (2007), Begay also limited the meaning of a “crime of vio *1137 lence” for purposes of the career-offender enhancement. Spencer argued that Begay applies retroactively to his sentence and makes clear that felony child abuse is not a crime of violence. Spencer moved that he be resentenced without the career-offender enhancement.
The district court denied Spencer’s motion to vacate his sentence, but we then granted a certificate of appealability on the following two issues:
Whether in light of Begay ..., Gilbert v. United States, 609 F.3d 1159 (11th Cir.2010), and Hunter v. United States, 559 F.3d 1188 (11th Cir.2009), the movant’s freestanding challenge to a career offender sentence imposed under U.S.S.G. § 4B1.1 is cognizable under 28 U.S.C. § 2255? If so, whether the district court, in light of Begay ... erroneously determined that the movant was properly classified as a career offender where he had a prior state conviction for felony child abuse under Fla. Stat. § 827.03(1)?
After a panel of this Court answered both questions in the affirmative, Spencer v. United States, 727 F.3d 1076 (11th Cir.2013), vacated pending reh’g en banc, No. 10-10676 (11th Cir. Mar. 7, 2014), we voted to vacate the panel opinion and rehear this appeal en banc.
II. STANDARD OF REVIEW
When we review the denial of a motion to vacate a sentence, 28 U.S.C. § 2255, “we review legal conclusions de novo and findings of fact for clear error.” Mamone v. United States, 559 F.3d 1209, 1210 (11th Cir.2009).
III. DISCUSSION
We divide our discussion in two parts. First, we explain why we exercise our discretion to decide this appeal despite a defective certificate of appealability; Second, we conclude that the district court lacked the authority to review Spencer’s claim that he was erroneously sentenced under the advisory guidelines.

A. The Certificate of Appealability Is Defective, But We Exercise Our Discretion to Consider the Merits of this En Banc Appeal at this Late Stage.

Prisoners who move to vacate their sentences may contest only a narrow subset of issues to our Court. A certificate of appealability may issue “only if the applicant has made a substantial showing of the denial of a constitutional right.” 28 U.S.C. § 2253(c)(2). The certificate must specify what issue or issues raised by the prisoner satisfy that requirement. Id. § 2253(c)(3). The Supreme Court has held that the issuance a certificate of appealability devoid of an underlying constitutional issue does not constitute a jurisdictional defect. See Gonzalez v. Thaler, — U.S. -, -, 132 S.Ct. 641, 649-52, 181 L.Ed.2d 619 (2012). But even so, we cannot ignore the clear command of Congress articulated in subsections 2253(c)(2) and (3).
Neither issue in the certificate for this appeal even purports to involve an underlying error of constitutional magnitude, but we decline to vacate the certificate at this laté hour. The parties have litigated this matter before the district court, before a panel of this Court, and before our en banc Court. See Rayner v. Mills, 685 F.3d 631, 635 n. 1 (6th Cir.2012) (“[A]s the issues have already been briefed and presented to this Court, we will not review the grant of the COA.”); Phelps v. Alameda, 366 F.3d 722, 728 (9th Cir.2004) (“In many cases, ... the effective deployment of substantial legal resources favors turning directly to the merits.”). They have briefed and orally argued this appeal twice, and we have heard an amicus curiae, the National Association of Criminal Defense Lawyers, in the second round. And nota *1138 bly both parties have urged us not to vacate the defective certificate that we erroneously issued.
We will not be so lenient in future appeals when a certificate fails to conform to the gatekeeping requirements imposed by Congress. Going forward, a certificate of appealability, whether issued by this Court or a district court, must specify what constitutional issue jurists of reason would find debatable. Even when a prisoner seeks to appeal a procedural error, the certificate must specify the underlying constitutional issue. Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000) (“When the district court denies a habeas petition on procedural grounds without reaching the prisoner’s underlying constitutional claim, a [certificate] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.”). A failure to specify that issue would violate the text enacted by Congress, see 28 U.S.C. § 2253(c)(3), and will result in the vacatur of the certificate.

B. The District Court Lacked the Authority To Consider Whether Spencer Was Errpneously Sentenced under the Guidelines.

Section 2255 does not provide a remedy for every alleged error in conviction and sentencing. When a prisoner, like Spencer, alleges that his “sentence was imposed in violation of the ... laws of the United States ... or is otherwise subject to collateral attack,” 28 U.S.C. § 2255(a), a district court lacks the authority to review the alleged error “unless the claimed error constitute^] ‘a fundamental defect which inherently results in a complete miscarriage of justice,’ ” United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quoting Hill, 368 U.S. at 428, 82 S.Ct. at 471). The Supreme Court first applied this standard when it ruled that a prisoner could not collaterally attack his sentence for a violation of Federal Rule of Criminal Procedure 32(a). Hill, 368 U.S. at 425-26, 82 S.Ct. at 470. The prisoner argued that the trial court failed to offer him an opportunity to make a personal statement at sentencing, but -the Supreme Court held that the error was not “of the character or magnitude cognizable under a writ of habeas corpus” because it was not “a fundamental defect which inherently results in a complete miscarriage of justice.” Id. at 428, 82 S.Ct. at 471.
The Supreme Court further distilled this standard in United States v. Addonizio, in which it ruled that a “lawful” sentence did not result in a “complete miscarriage of justice.” 442 U.S. at 186-87, 99 S.Ct. at 2241. Addonizio argued that he had been incarcerated longer than the sentencing court had intended. At sentencing, the court expressed that it expected Addonizio to serve only one-third of his sentence. Id. at 181, 183, 99 S.Ct. at 2238, 2239. But after the trial court sentenced Addonizio, the Parole Commission instituted a new policy that required him to serve a greater fraction of his sentence before he was eligible for parole. Id. at 182, 99 S.Ct. at 2238-39. The Supreme Court held that Addonizio failed to establish a fundamental defect where his sentence was less than the statutory maximum sentence prescribed by Congress. Id. at 186-87, 99 S.Ct. at 2241. Likewise, the alleged error in this appeal — erroneously designating a defendant as a career offender — is not a fundamental defect that inherently results in a complete miscarriage of justice.
*1139 A prisoner may challenge a sentencing error as a “fundamental defect” on collateral review when he can prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated, but Spencer’s motion alleges nothing of the kind. In Davis v. United States, for example, the Supreme Court collaterally reviewed a prisoner’s conviction for conduct that was no longer illegal. 417 U.S. 333, 346-47, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). Because the prisoner was incarcerated “for an act that the law does not make criminal,” “[t]here [could] be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice.” Id. at 346, 94 S.Ct. at 2305 (internal quotation marks omitted). A prisoner might also collaterally attack a sentence enhanced by a prior conviction if that prior conviction has since been vacated. In Johnson v. United States, the Supreme Court ex plained that “a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated.” 544 U.S. 295, 303, 125 S.Ct. 1571, 1577, 161 L.Ed.2d 542 (2005) (emphasis added); see also Stewart v. United States, 646 F.3d 856, 859, 864-65 (11th Cir.2011) (“The vacatur order gives a defendant ... the basis to challenge an enhanced federal sentence____”). But the Supreme Court has rejected collateral attacks of other sentencing errors, including the failure of the sentencing court to mention the right to appeal or to explain parole terms, where the prisoner could establish no prejudice. See Peguero v. United States, 526 U.S. 23, 24, 119 S.Ct. 961, 963, 143 L.Ed.2d 18 (1999); United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).
This limited realm of fundamental defects that result in a complete miscarriage of justice comports with our understanding of the similarly phrased exception to the rule of procedural default for state prisoners. If a state prisoner procedurally defaults his claim, he can overcome that procedural default if he establishes that a “fundamental miscarriage of justice” would result if he were not able to raise the claim on collateral review. Murray v. Carrier, 477 U.S. 478, 496-97, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986); see also Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). For a state prisoner to establish a fundamental miscarriage of justice, he must prove that he is innocent. See Schlup v. Delo, 513 U.S. 298, 316, 115 S.Ct. 851, 861, 130 L.Ed.2d 808 (1995); McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); Rozzelle v. Sec’y, Fla. Dep’t of Corr., 672 F.3d 1000, 1011 (11th Cir.2012). The similarly worded federal standard should not be more lenient than the exception for procedural default for state prisoners. See, e.g., United States v. Cuch, 79 F.3d 987, 994 (10th Cir.1996) (concluding that alleged defects did not result in a “complete miscarriage of justice” because there was “no indication that an innocent person may have been convicted for crimes he did not commit” (internal quotation marks omitted)). When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice.
Judge Jordan’s dissenting opinion suggests that the Supreme Court granted collateral relief in United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963), to correct a garden- *1140 variety sentencing error, but the error in Behrens was far more profound than a misapplication of advisory sentencing guidelines. In Behrens, the district court violated Federal Rule of Criminal Procedure 43, which requires that the defendant be present “at every stage of the trial including ... the imposition of sentence.” Id. at 165, 84 S.Ct. at 297. The district court imposed a sentence without the defendant or even his counsel present. Id. That error in turn deprived the defendant of the right to alloeute and present information in mitigation of punishment in violation of Rule 32(a). Id. We have described the guarantee of the right to be present at sentencing as being “constitutionally based.” United States v. Jackson, 923 F.2d 1494, 1496 (11th Cir.1991); see also United States v. Huff, 512 F.2d 66, 71 (1975). And Behrens described the right to alloeute as “ancient in the law” and “of most importance.” 375 U.S. at 165, 84 S.Ct. at 297. Imposing a sentence without a defendant’s counsel present also implicates a defendant’s Sixth Amendment right to effective assistance of counsel. See Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 256-57, 19 L.Ed.2d 336 (1967). A misapplication of advisory sentencing guidelines, in contrast, does not violate an “ancient” right, nor does it raise constitutional concerns.
Our dissenting colleagues would grant Spencer’s collateral attack to correct an alleged misapplication of the advisory sentencing guidelines, but they fail to explain what sort of misapplication of the advisory guidelines they would not correct, much less provide a principled test for distinguishing between misapplications of the guidelines that can be collaterally challenged and those that cannot. Perhaps our colleagues view all misapplications of the advisory guidelines as '“fundamental defects which inherently result in a complete miscarriage of justice.” But if not, we are left to guess about which types of guideline error could be corrected on collateral review from their perspective.
We lack the authority to provide Spencer relief. Even if he is not a career offender, his sentence is lawful. See Addonizio, 442 U.S. at 186-87, 99 S.Ct. at 2241. Spencer does not allege that he is actually innocent of the crime for which he was indicted, nor that any of his prior convictions have been vacated. Instead, he contends only that the district court erroneously classified him as a career offender under the advisory guidelines. But any miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory. If the district court were to resentence Spencer, the district court could impose the same sentence again. See Gilbert v. United States, 640 F.3d 1293, 1304 (11th Cir.2011) (en banc) (“There is, however, no guarantee that his new sentence under the post-Booker advisory guidelines system will be shorter than 292 months. It could be the same or even longer.”); Hawkins v. United States, 706 F.3d 820, 825 (7th Cir.2013); Sun Bear v. United States, 644 F.3d 700, 705 (8th Cir.2011) (en banc). In a resentencing, the district court would again review Spencer’s prior conviction for felony child abuse, whether or not it is a “crime of violence,” and could decide that his slew of prior convictions warrants a greater sentence than the guidelines prescribe. See Hawkins, 706 F.3d at 825.
Both the Seventh and Eighth Circuits have held that federal courts lack the power to provide a prisoner relief on the ground that he was miselassified as a career offender, because that error does not render his sentence unlawful. See Hawkins, 706 F.3d at 823; Sun Bear, 644 F.3d at 704-06; see also United States v. Peterman, 249 F.3d 458, 462 (6th Cir.2001) (“[Cjourts have generally declined to col *1141 laterally review sentences that fall within the statutory maximum.”); United States v. Segler, 37 F.3d 1131, 1133-34 (5th Cir.1994); Scott v. United States, 997 F.2d 340, 341 (7th Cir.1993) (“A claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum.”). But cf. Narvaez v. United States, 674 F.3d 621, 628 (7th Cir.2011) (concluding that a prisoner sentenced under “mandatory” guidelines could establish a “complete miscarriage of justice” if the prisoner was erroneously sentenced as a career offender). In Sun Bear v. United States, the prisoner argued that he was entitled to resentencing because Begay called into question whether his prior felonies were “erime[s] of violence.” 644 F.3d at 703-04. The Eighth Circuit held that he was not entitled to resentencing based on a misapplication of the guidelines. Id. Spencer would have us distinguish Sun Bear because, even though the prisoner was sentenced as a career offender, his sentence was within the applicable guideline range absent the career-offender enhancement. But the en banc Eighth Circuit made clear that, “in sentencing, a miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law.” Id. at 706. In Sun Bear, the prisoner’s sentence, which was below the statutory maximum, was not “unlawful” because “[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority.” Id. at 705. And in Hawkins v. United States, the Seventh Circuit refused to entertain a prisoner’s argument on collateral review that he was erroneously sentenced as a career offender. The Seventh Circuit reasoned that, even if a district judge imposes a sentence in excess of the correct advisory guideline range, the error is not “corrigible in a postconviction proceeding” because “the sentence is below the statutory maximum.” 706 F.3d at 823.
Spencer relies heavily on the now-vacated opinion of the Fourth Circuit in Whiteside v. United States, 748 F.3d 541 (4th Cir.2014), vacated pending reh’g en banc, 578 Fed.Appx. 218 (4th Cir.2014). That divided panel, over the persuasive dissent of Judge Wilkinson, held that erroneously classifying a prisoner as a career offender was a “fundamental defect” that a federal court could remedy on collateral review. Id. at 555. But as Judge Wilkinson’s dissent explained, no fundamental defect occurs when a court erroneously sentences a prisoner as a career offender under advisory guidelines. Id. at 560 (Wilkinson, J., dissenting). Even if a court vacated the sentence on collateral review, the district court would be free to impose the same sentence on remand. Id.
Spencer asks us to distinguish a career-offender error from other guideline errors because the career-offender enhancement is the result of a congressional mandate. See 28 U.S.C. § 994(h). Congress directed the United States Sentencing Commission to “assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized” for defendants convicted of crimes of violence or certain drug crimes and who have two or more prior felonies that qualify as crimes of violence or certain drug crimes. Id. The career-offender enhancement, U.S.S.G. § 4B1.1, satisfies that congressional directive.
Spencer’s argument fails to appreciate the advisory nature of every provision of the guidelines. Although Congress directed the Sentencing Commission to create a guideline for career offenders, a district judge cannot treat that guideline as mandatory. See Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007) (“[T]he sentencing *1142 court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.”). Moreover, all of the guidelines are the result of a congressional directive — the Sentencing Reform Act of 1984 — but none is tantamount to the laws of Congress. See Mistretta v. United States, 488 U.S. 361, 395, 109 S.Ct. 647, 667, 102 L.Ed.2d 714 (1989) (“Prior to the passage of the Act, the Judicial Branch, as an aggregate, decided precisely the questions assigned to the Commission.... It was the everyday business of judges, taken collectively, to evaluate and weigh the various aims of sentencing and to apply those aims to the individual cases that came before them. The Sentencing Commission does no more than this.... ”).
Spencer also contends that career-offender errors are more serious than other guideline errors, but “[e]very Guidelines calculation may affect the sentencing range to a greater or lesser degree.” Whiteside, 748 F.3d at 561 (Wilkinson, J., dissenting). The greater impact of one enhancement versus the lesser impact of another enhancement is immaterial because, in either scenario, the sentence will be within the statutory limits imposed by Congress. See U.S.S.G. § 5G1.1(a) (‘Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.”).
We are also unpersuaded by the argument of both Spencer and the amicus curiae that Spencer’s advisory guideline sentence is unlawful because it could be vacated on direct review for substantive unreasonableness. In this post-Booker world, we refuse to speculate whether a sentence exceeding an advisory guideline range would be vacated on direct review. To be sure, the guidelines are a “lodestone of sentencing,” Peugh v. United States, — U.S. -, -, 133 S.Ct. 2072, 2084, 186 L.Ed.2d 84 (2013), but treating the guidelines as mandatory is reversible error, Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). And even though district courts “must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process,” id. at 50 n. 6, 128 S.Ct. at 596 n. 6, only half (51.2 percent) of the defendants sentenced in 2013 received a sentence within the guideline range, United States Sentencing Commission, 2013 Annual Report and 2013 Sourcebook of Federal Sentencing Statistics, at A-39 (2013). Approximately one-quarter (27.9 percent) of sentences were imposed below the guideline range at the request of the government. Id. And district courts imposed,the remaining sentences (20.8 percent) above or below the guideline range. Id. at 40, 128 S.Ct. 586.
Spencer argues that errors involving the career-offender enhancement are somehow different, but sentencing courts depart or vary from the guideline range more often when they sentence career offenders. Only 30 percent of career offenders were sentenced within the guideline range in 2013. When Spencer was sentenced, the district court concluded — over Spencer’s objection that his prior conviction was not a crime of violence — that Spencer deserved a harsh sentence within the guideline range. Perhaps the district court would impose a less severe sentence on resentencing; perhaps it would not, especially given Spencer’s prior conviction for felony child abuse and his repeated run-ins with the law. But we need not speculate because, as • our sister circuits have concluded in routine, unpublished decisions, the reimposition of the same sentence ordinarily will not be substantively unreasonable given the defendant’s criminal history, whether or not he qualifies as a career *1143 offender. See, e.g., United States v. Lewis, 496 Fed.Appx. 425 (5th Cir.2012) (affirming as substantively reasonable the same 360-month sentence without the career-offender enhancement); United States v. Logan, 456 Fed.Appx. 224 (4th Cir.2011) (affirming as substantively reasonable the same 36-month sentence without the career-offender enhancement); see also United States v. Miles, 395 Fed.Appx. 149 (5th Cir.2010) (affirming as substantively reasonable a 210-month sentence, which was two times greater than the guideline range without the career-offender enhancement).
Even if a variance from the guideline range is “substantively unreasonable,” that standard is not synonymous with the standard we employ on collateral review. A substantively unreasonable sentence does not result in a “complete miscarriage of justice” if that sentence is less than the statutory maximum sentence Congress has enacted. Spencer’s attempt to equate the alleged guideline error in his sentencing with an error in the application of the Armed Career Criminal Act, 18 U.S.C. § 924(e), illustrates our point. Even if we were to assume that the district court incorrectly classified Spencer as a career offender — nearly doubling his guideline range — his sentence of 151 months of imprisonment falls well below the statutory maximum of 20 years. 21 U.S.C. § 841(b)(1)(C). In contrast with that alleged guideline error, an error in the application of the Armed Career Criminal Act catapults a defendant beyond the 10-year statutory maximum sentence for his crime. Compare id. § 924(a)(2) (providing for punishment of not more than 10 years of incarceration), with id. § 924(e) (requiring punishment of not less than 15 years of incarceration if the defendant has three prior violent felony or serious drug convictions). We can collaterally review a misapplication of the Armed Career Criminal Act because, unlike an advisory guideline error, that misapplication results in a sentence that exceeds the statutory maximum.
Spencer also likens his alleged sentencing error to Johnson and Stewart, in which the movants’ prior convictions, used to enhance their sentences, had been vacated. And Judge Jordan’s dissenting opinion argues that there is no meaningful distinction between the vacated convictions in Johnson and Stewart and Spencer’s conviction for felony child abuse. We disagree.
Spencer’s prior conviction has not been vacated, and that distinction matters. When a conviction is vacated, that vacatur constitutes a “new ‘fact’ ” with which the petitioner can challenge his sentence. Stewart, 646 F.3d at 858. But here, Spencer argues no new factual basis for reversing his sentence. He presents instead an argument of legal innocence. Even if we were to agree with Spencer that he is “innocent” as a career offender, that legal innocence falls far short of factual innocence, the kind of innocence involved in Johnson and Stewart. See McKay v. United States, 657 F.3d 1190, 1199 (11th Cir.2011) (“[A]ctual innocence means factual innocence, not mere legal insufficiency.” (internal quotation marks omitted)). If we were to conclude that felony child abuse was not a “crime of violence,” that legal conclusion would not negate the fact that Spencer committed a serious crime. The sentencing judge would consider his prior conviction for felony child abuse anew during resentencing. Johnson and Stewart cannot stand for the proposition that a prisoner sentenced under advisory guidelines whose prior convictions remain valid can establish that an error in sentencing is a complete miscarriage of justice.
*1144 Spencer urges us to forget about finality, at least for the first round of collateral review. He argues that our en banc decision in Gilbert, 640 F.3d at 1307-08, distinguished between claims raised in a first motion to vacate and those raised in second or successive motions. We are unpersuaded by this distinction.
Finality is a concern not only for a second or successive motion to vacate, but also for a first motion to vacate a sentence. Finality “is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its" deterrent effect.” Teague v. Lane, 489 U.S. 288, 309, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989). And “[a] procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands.” McCleskey, 499 U.S. at 492, 111 S.Ct. at 1469 (internal quotation marks omitted); see also Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142, 145 (1970) (“The proverbial man from Mars would surely think we must consider our system of criminal justice terribly bad if we are willing to tolerate such efforts at undoing judgments of conviction.”). Spencer must establish that his sentencing error resulted in a complete miscarriage of justice before we set aside our interest in finality. He cannot do so.
Finally, Spencer, the amicus curiae, and our dissenting colleagues place far too much weight on the relevance of Peugh, which involved a direct appeal of a sentence. 133 S.Ct. 2072. Peugh says nothing about the authority to consider an advisory guideline error on collateral review. See Hawkins v. United States, 724 F.3d 915, 916-19 (7th Cir.2013) (denying rehearing en banc because the intervening decision in Peugh did not affect collateral review of sentencing errors). In Peugh, the Supreme Court held, “A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation.” — U.S. at -, 133 S.Ct. at 2084. The Court reasoned that a retrospective increase in the applicable advisory guideline range created a “sufficient risk of a higher sentence” because advisory sentences are still “anchored by the Guidelines.” Id. at ---, 133 S.Ct. at 2083-84. But the standard employed in Peugh, id. at -, 133 S.Ct. at 2085 (requiring a “significant risk of a higher sentence”), is far less demanding than the standard Spencer must satisfy: that an error in the application of advisory guidelines “inherently results in a complete miscarriage of justice,” Hill, 368 U.S. at 428, 82 S.Ct. at 471; see also Hawkins, 724 F.3d at 917. Because Spencer cannot establish that his alleged sentencing error resulted in a “complete miscarriage of justice,” we do not have the authority to consider Spencer’s claim on collateral review. Peugh is inapposite.
Spencer’s sentence was and is lawful. It does not exceed the statutory maximum sentence. See 21 U.S.C. § 841(b)(1)(C). A resentencing court could reimpose the same sentence, and the court would again consider Spencer’s valid prior conviction for felony child abuse in determining his sentence. Because there has been no “complete miscarriage of justice,” there can be no collateral review of Spencer’s sentence.
IV. CONCLUSION
We AFFIRM the denial of the motion to vacate Spencer’s sentence.