[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17304

_____

D.C. Docket Nos. 8:16-cv-01842-RAL-TGW; 8:08-cr-00117-RAL-TGW-1

HECTOR MANUEL ROSALES-DIAZ,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 20, 2020)

Before HULL, MARCUS and EBEL,* Circuit Judges.

HULL, Circuit Judge:

After a guilty plea, Hector Rosales-Diaz, a federal prisoner, is serving a 10-

_____

*The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

year sentence for unlawful presence in the United States after having been previously removed, in violation of 8 U.S.C. § 1326(a). Rosales-Diaz does not challenge his conviction but appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his 10-year prison sentence. Based on the record as a whole and with the benefit of oral argument, we conclude that Rosales-Diaz has not carried his burden to show that the district court erred in denying his § 2255 motion.

## I.  FACTUAL BACKGROUND

### A.    Offense Conduct and Guilty Plea

Between 1999 and 2006, Rosales-Diaz, a native and citizen of Mexico, was convicted of Florida misdemeanor and felony offenses including: (1) grand theft (motor vehicle); (2) obstructing an officer without violence; (3) driver's license violations; (4) possession of marijuana and methamphetamines; (5) reckless driving; (6) battery; (7) burglary; and (8) leaving the scene of an accident. Rosales-Diaz also has felony convictions for burglary of an occupied dwelling and discharging a firearm from a vehicle. See Fla. Stat. §§ 810.02(3)(a), 790.15(2).

On December 9, 2006, Rosales-Diaz was deported to Mexico. At some point, Rosales-Diaz illegally reentered the United States, and on November 20, 2007, was arrested in Florida for driving on a suspended license.

On March 18, 2008, a federal grand jury charged Rosales-Diaz with being

2

an alien "found to be voluntarily in the United States" after having been previously convicted of aggravated felony offenses and deported, in violation of 8 U.S.C. § 1326(a) and (b)(2).  The government filed a notice that Rosales-Diaz faced a statutory maximum 20-year sentence under § 1326(b)(2) because his Florida convictions for burglary and discharging a firearm from a vehicle constituted aggravated felonies under the immigration statutes.

On March 26, 2009, Rosales-Diaz pled guilty.  He admitted that he previously pled no contest to burglary and discharging a firearm from a vehicle in Florida state court and confirmed that he received a sentence for those crimes.  The district court accepted Rosales-Diaz's plea.

**B.    Sentencing in 2009**

Rosales-Diaz's presentence investigation report ("PSI") assigned him a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a) (2008).  The PSI increased the base offense by 16 levels, pursuant to § 2L1.2(b)(1)(A)(ii), because Rosales-Diaz was previously deported following a conviction for a crime of violence, namely Florida burglary of an occupied dwelling.  Rosales-Diaz received a 3-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), yielding a total offense level of 21.

The PSI assigned Rosales-Diaz 26 criminal history points, placing him in criminal history category VI.  A total offense level of 21 and a criminal history

3

category VI yielded an advisory guidelines range of 77 to 96 months'

imprisonment.  Rosales-Diaz objected to the 16-level increase, arguing that his

burglary conviction was of an unoccupied dwelling and not a crime of violence

under § 2L1.2(b)(1)(A)(ii).  At sentencing, the district court overruled Rosales-

Diaz's objection because the state-court documents indicated that he was convicted

of burglary of an occupied dwelling, which constituted a crime of violence under

that guidelines provision.

At the June 2009 sentencing hearing, the district court accepted the PSI's

guidelines calculations and advisory range of 77 to 96 months' imprisonment.

However, the district court sentenced Rosales-Diaz to 120 months' (10 years)

imprisonment, varying 24 months above the guidelines high end of 96 months (8

years).  Explaining his upward variance, the district court said that "[s]ince

becoming an adult at age 18, [Rosales-Diaz has] committed crimes which net him

a criminal history category of 26 points, which is double the number that you need

to qualify for the highest criminal history category, that of six."  The district court

described Rosales-Diaz as a "career criminal" who returned after deportation to

commit crimes, and it rejected his assertion that he came back to the United States

to be with his children.  The district court highlighted that Rosales-Diaz had no

regard for the safety and welfare of the community and had no respect for the law.

The district court also cited the need to afford adequate deterrence to

4

repetitive criminal conduct and to protect the public from Rosales-Diaz's future crimes.  In addressing Rosales-Diaz personally, the district court said: "You are a one-man crime wave.  You are a menace to the community.  You're a burglar, you're a thief, you assault people.  You resist law enforcement's efforts to apprehend you.  You cause accidents, you leave the scene of accidents."  The district court reiterated that Rosales-Diaz had a wide range of prior crimes, including "fleeing the scene of accidents, fleeing from law enforcement, assaulting people, . . . burglarizing a person's vehicle, [and] burglarizing a person's home."  The district court stated that, while we all make mistakes, Rosales-Diaz had made too many.

After taking into account both the advisory guidelines and the 18 U.S.C. § 3553(a) factors, the district court determined that an upward variance was "more than in order."  The district court noted that it had seriously considered giving Rosales-Diaz the statutory maximum of 20 years' imprisonment because of the likelihood that Rosales-Diaz would return to the United States after serving his sentence and being deported back to Mexico.  However, the district court ultimately determined that a 10-year sentence was "more than reasonable in this case."

## C.    Direct Appeal in 2010

Rosales-Diaz appealed only the procedural and substantive reasonableness

of his 10-year sentence to this Court.  United States v. Rosales-Diaz, 367 F. App'x 62, 63 (11th Cir. 2010) (unpublished).  In affirming, this Court concluded that Rosales-Diaz's 10-year sentence was procedurally reasonable because "the district court correctly calculated Rosales-Diaz's [advisory] guidelines range, addressed the § 3553(a) factors, and gave a thorough explanation, on the record, for its decision to deviate from the applicable guidelines range."  Id. at 65.  We concluded that Rosales-Diaz's sentence was substantively reasonable "[g]iven the nature and circumstances of the offense as well as Rosales-Diaz's extensive criminal history."  Id. at 66.  In 2010, the Supreme Court denied Rosales-Diaz's petition for a writ of certiorari.  Rosales-Diaz v. United States, 562 U.S. 866, 131 S. Ct. 156 (2010) (mem.).

**D.    § 2255 Motion**

On June 26, 2015, the Supreme Court issued its decision in Johnson v. United States, which invalidated the residual clause of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague.  See 576 U.S. ___, ___, 135 S. Ct. 2551, 2557 (2015).  On June 21, 2016, Rosales-Diaz deposited in the prison mailing system a pro se motion to vacate his sentence, pursuant to 28 U.S.C. § 2255.  The district court appointed him counsel.

In his counseled § 2255 motion, Rosales-Diaz argued that his sentence was unlawful under Johnson because the residual clause in the "crime of violence"

6

definition in 18 U.S.C. § 16(b) was, like the ACCA's residual clause, unconstitutionally vague. Rosales-Diaz contended that his Florida convictions for burglary of an occupied dwelling and discharging a firearm from a vehicle no longer qualified as "crime[s] of violence" under § 16(b) and thus did not constitute aggravated felonies that increased his statutory maximum to 20 years under § 1326(b)(2). Rosales-Diaz claimed that the statutory maximum penalty for his unlawful presence conviction was only 2 years under § 1326(a). See 8 U.S.C. § 1326(a) (providing the statutory maximum penalty for a removed alien who illegally reenters the United States is 2 years' imprisonment).

The government filed a motion to dismiss Rosales-Diaz's § 2255 motion as untimely, noting also that it was not waiving procedural default or other possible defenses.

## E.    District Court's § 2255 Order

On September 29, 2016, the district court denied Rosales-Diaz's § 2255 motion on the merits and denied as moot the government's motion to dismiss. Importantly to this appeal, the district judge in the § 2255 case was the same judge who originally sentenced Rosales-Diaz.

In the § 2255 order, the district court first reviewed how it had earlier sentenced Rosales-Diaz. Specifically, the district court pointed out that Rosales-Diaz's advisory guidelines range had been 77 to 96 months' imprisonment, but that

it had varied upward and sentenced Rosales-Diaz to 120 months' (10 years) imprisonment.  Next, the district court recognized that if Johnson rendered § 16(b)'s residual clause invalid, then Rosales-Diaz's statutory maximum would be only 10 years.

Specifically, the district court found that, even assuming Johnson invalidated § 16(b)'s residual clause and that Rosales-Diaz's § 2255 motion was timely, he was still subject to an enhanced sentence of 10 years' imprisonment under § 1326(b)(1) for having reentered the United States after being removed following a conviction for a felony, other than an aggravated felony.  See 8 U.S.C. § 1326(b)(1).  The district court then found that Rosales-Diaz "was clearly convicted of two felony offenses" before his deportation and illegal reentry. Consequently, the district court found that because it had not sentenced Rosales-Diaz in excess of 10 years and because he was still subject to a 10-year statutory maximum under § 1326(b)(1), he was not entitled to relief under § 2255.

Accordingly, the record tells us that the district court judge in the § 2255 case was fully aware that (1) he had varied upward in his original sentencing of Rosales-Diaz and (2) Rosales-Diaz's statutory maximum was now 10 years, instead of the original 20 years.  Nonetheless, the district court chose not to change Rosales-Diaz's 10-year sentence, found his earlier imposed sentence was still a

legal sentence and was warranted, and denied Rosales-Diaz's § 2255 motion.[1]

Rosales-Diaz timely appealed.  Because Dimaya[2] was not yet decided, the

district court granted Rosales-Diaz a certificate of appealability on this issue:

> Whether the Supreme Court's decision in [Johnson] invalidated the
> residual clause definition of a crime of violence in[]18 U.S.C. § 16(b)
> such that [Rosales-Diaz] was deprived of due process of law when his
> sentence was enhanced based on the residual clause definition of a
> crime of violence set forth in 18 U.S.C. § 16(b).

This Court granted Rosales-Diaz's unopposed motion to stay pending the Supreme

Court's Dimaya decision.

## II. DISCUSSION

### A.    General § 2255 Principles

"Section 2255 does not provide a remedy for every alleged error in . . .

sentencing."  Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en

banc).  Rather, a § 2255 movant must show that his "sentence was imposed in

violation of the Constitution or laws of the United States, . . . or that the sentence

---

[1]In its § 2255 order, the district court noted that Rosales-Diaz's counsel had not argued that Rosales-Diaz's 16-level guidelines enhancement for a crime of violence pursuant to § 2L1.2(b)(1)(A)(ii) was also impermissible under Johnson.  Even if counsel had done so, the district court pointed out that any such argument failed in light of United States v. Matchett, 802 F.3d 1185 (11th Cir. 2016) (holding the constitutional vagueness doctrine does not apply to the advisory sentencing guidelines).  Before this Court, Rosales-Diaz clarified in supplemental filings and at oral argument that he is not challenging his 16-level enhancement pursuant to § 2L1.2(b)(1)(A)(ii).  See Spencer v. United States, 773 F.3d 1132, 1140 (11th Cir. 2014) (en banc) (holding a federal prisoner cannot collaterally attack his sentence based on a misapplication of the advisory guidelines).

[2]Sessions v. Dimaya, 584 U.S. ___, 138 S. Ct. 1204 (2018).

9

was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). As a § 2255 movant, Rosales-Diaz bears the burden of proving his claims. Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015) (noting the petitioner "bears the burden to prove the claims in his § 2255 motion"); LeCroy v. United States, 739 F.3d 1297, 1321 (11th Cir. 2014) (explaining "the burden of proof[] . . . on a § 2255 petition belongs to the petitioner"); see Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017) (holding that a Johnson § 2255 claimant, "like any other § 2255 movant," must prove his Johnson claim and that he must do so by establishing that "the [ACCA's residual] clause actually adversely affected the sentence he received").[3]

Before discussing Rosales-Diaz's claims, we review 8 U.S.C. § 1326(b), which provides the criminal penalties for illegal reentry convictions of removed aliens.

## B.    Criminal Penalties in 8 U.S.C. § 1326(b)

An alien is subject to 10 years' imprisonment if the alien's prior removal "was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)." 8 U.S.C. § 1326(b)(1). An alien is subject to 20 years'

---

[3]When reviewing the denial of a § 2255 motion, we review the district court's legal conclusions de novo and its findings of fact for clear error. Spencer, 773 F.3d at 1137.

imprisonment if the alien's prior removal "was subsequent to a conviction for commission of an aggravated felony." Id. § 1326(b)(2). For the purposes of § 1326(b)(2), an "aggravated felony" includes a "crime of violence" as defined in 18 U.S.C. § 16(b) for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(F).

In turn, § 16(b) defines a "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). In Dimaya, the Supreme Court applied Johnson and struck down as unconstitutionally vague § 16(b)'s residual-clause definition of a crime of violence. Sessions v. Dimaya, 584 U.S. at ___, ___, 138 S. Ct. 1204, 1210, 1213-16, 1218-23 (2018). With this background, we turn to Rosales-Diaz's claims on appeal.

## C.    Rosales-Diaz's First Claim

As an initial matter, Rosales-Diaz claims that Johnson and Dimaya render his 10-year sentence unlawful because, without § 16(b)'s residual clause, his two prior Florida convictions—burglary of an occupied dwelling and discharging a firearm from a vehicle—no longer qualify as "aggravated felonies" under § 16(b). Rosales-Diaz suggests that he would have faced a statutory maximum penalty of only 2 years' imprisonment under § 1326(a), rather than 20 years' imprisonment

11

under § 1326(b).[4]

Rosales-Diaz is incorrect.  In its § 2255 order, the district court properly concluded that, even without § 16(b)'s residual clause, Rosales-Diaz was subject to the 10-year statutory maximum sentence under § 1326(b)(1) because his prior removal was still subsequent to a felony.  Namely, while Rosales-Diaz's two above prior Florida convictions may no longer constitute "aggravated felonies" under § 1326(b)(2), they still constitute felonies under § 1326(b)(1).  See Fla. Stat. §§ 810.02(3)(a), 790.15(2).  Thus, even after Dimaya invalidated § 16(b), Rosales-Diaz's 10-year sentence on its face was and remains lawful because it falls within the statutory maximum penalty for his § 1326(a) conviction.

## D.    Rosales-Diaz's Second Claim

Alternatively, Rosales-Diaz claims that, even if his 10-year sentence does not exceed the permissible statutory maximum criminal penalty for his illegal reentry conviction, the Johnson–Dimaya constitutional error still "caused him prejudice because had the district court known his proper range, it may have sentenced him to less than the 120-month statutory maximum for his offense." Rosales-Diaz claims he has shown that his sentence "may have been different if the district court knew he had never been convicted of an 'aggravated felony' and his

---

[4]On appeal, the government claims that Rosales-Diaz's § 2255 motion is both untimely and procedurally defaulted.  We need not reach these issues because, in any event, the district court did not err in denying Rosales-Diaz's § 2255 motion on the merits.

maximum term of imprisonment was only 120, and not 240, months." Rosales-Diaz asserts that the fact that the district court was misinformed about his statutory maximum penalty violated his due process right to a fair and accurate sentencing hearing.

Because a § 2255 motion is a collateral attack, "habeas relief will be granted only if the constitutional violation at the trial level resulted in 'actual prejudice' to the [movant]." Phillips v. United States, 849 F.3d 988, 993 (11th Cir. 2017) (quotation marks and alterations omitted). Even if a movant has sufficiently alleged a cognizable error under § 2255, the district court's error is nevertheless subject to harmless error analysis. See Rivers, 777 F.3d at 1316.[5]

In the § 2255 context, an error is harmless "if it had no substantial influence on the outcome and sufficient evidence uninfected by error supports the decision." Id. (quotation marks and alterations omitted). Stated another way, a § 2255 movant "is entitled to reversal only when [the] error resulted in actual prejudice because it had substantial and injurious effect or influence in determining" the final

---

[5]Harmlessness is a legal question we review de novo. Phillips, 849 F.3d at 993. Our above precedent largely involves direct appeals of sentencing errors where the defendant must show actual prejudice and where the harmless error standard applies. See id.; Rivers, 777 F.3d at 1316; Vines, 28 F.3d at 1130. To some extent, our § 2255 precedent suggests that Rosales-Diaz, as a § 2255 movant here, would need to show the alleged sentencing error not only prejudiced him but also constituted "a fundamental defect which inherently results in a complete miscarriage of justice." Spencer, 773 F.3d at 1138 (quotation marks omitted). Since the sentencing error here was harmless and Rosales-Diaz has not shown actual prejudice, we need go no further than the direct appeal standard to decide this case.

result.  Vines v. United States, 28 F.3d 1123, 1130 (11th Cir. 1994) (quotation marks omitted).  Contrastingly, the "error is not harmless if there is a reasonable likelihood that it affected the defendant's substantial rights."  Rivers, 777 F.3d at 1316 (quotation marks and alterations omitted).

Importantly, a sentencing error is harmless, and remand is unnecessary, if the record as a whole shows that the district court would have imposed the same sentence absent the erroneous factor.  See United States v. Williams, 503 U.S. 193, 203, 112 S. Ct. 1112, 1120-21 (1992); see, e.g., United States v. Keene, 470 F.3d 1347, 1348-50 (11th Cir. 2006) (concluding that any sentencing error in applying the threat-of-death enhancement was harmless and "did not affect the district court's selection of the sentence imposed" because the district court explicitly stated that it would have imposed the same sentence anyway and the sentence was reasonable under the § 3553(a) factors (quotation marks omitted)); United States v. Blas, 360 F.3d 1268, 1270, 1272-74 (11th Cir. 2004) (holding that any sentencing error in applying a two-level increase to the defendant's base offense level for knowingly misrepresenting his identity was harmless because the district court departed upward from the guidelines range such that the enhancement had no effect on the sentence imposed and the upward departure was justified and reasonable).  Again, Rosales-Diaz bears the burden of proving his § 2255 constitutional claim and showing that any error was not harmless.  Rivers, 777

14

F.3d at 1316.

Here, Rosales-Diaz has not carried his § 2255 burden to prove that a constitutional error "resulted in actual prejudice."  See Phillips, 849 F.3d at 993 (quotation marks omitted).  Rather, the record as a whole shows that the district court chose to keep the same 10-year sentence even after recognizing, in light of Johnson and in anticipation of Dimaya, that Rosales-Diaz's statutory maximum penalty was only 10 years, instead of 20 years.  See Williams, 503 U.S. at 203, 112 S. Ct. at 1120-21.

For starters, as noted earlier, the same district court judge who sentenced Rosales-Diaz originally in 2009 also reviewed and ruled on his § 2255 motion in 2016.  Back in 2009, the judge highlighted each of Rosales-Diaz's prior crimes, how he had 26 criminal history points, and how that was double the minimum amount to qualify for a criminal history category VI.  In the same vein, the district court judge characterized Rosales-Diaz as a "career criminal," a "one-man crime wave," a "menace to the community," a "burglar," a "thief," and someone who "assault[s] people," "resist[s] law enforcement's [apprehension] efforts," "cause[s] accidents," and "leave[s] the scene of accidents."  The district court judge found that Rosales-Diaz had no regard for the safety and welfare of the community, had no respect for the law, and had not been deterred by his prior sentence, such that an upward variance was "more than in order."  Although the top end of Rosales-

15

Diaz's advisory guidelines range was 96 months (8 years), the district court varied upward and imposed a 10-year sentence—two years above that top end.

Then, in 2016, that same district court judge denied Rosales-Diaz's § 2255 motion to vacate his 10-year sentence. Before doing so though, the district court judge explicitly recognized: (1) that Rosales-Diaz's original statutory maximum was 20 years under § 1326(b)(2); (2) that the court itself had varied upward in imposing Rosales-Diaz's original 10-year sentence; and (3) most importantly, that if Johnson invalidated § 16(b)'s residual clause, Rosales-Diaz's statutory maximum would now be only 10 years' imprisonment under § 1326(b)(1), rather than the original 20-year statutory maximum.[6]

Only after recalling its prior upward variance and that Rosales-Diaz's statutory maximum would now become 10 years did the district court choose to deny Rosales-Diaz's § 2255 motion and to not change his original 10-year sentence. In doing so, the district court explicitly pointed out that its earlier 10-year sentence still did not exceed the now-applicable 10-year statutory maximum.

---

[6]We recognize that Rosales-Diaz claims that the initial misinformation about his 20-year statutory maximum penalty alone was "misinformation of a constitutional magnitude," citing United States v. Tucker, 404 U.S. 443, 92 S. Ct. 589 (1972). In Tucker, the defendant demonstrated that his sentence "might have been different if the sentencing judge had known that at least two of [his] previous convictions had been unconstitutionally obtained" without the benefit of legal counsel. Id. at 448, 92 S. Ct. at 592. In contrast here, the misinformation was corrected as the district court learned that Rosales-Diaz's statutory maximum was only 10 years. Thus, when it denied the § 2255 motion, the district court was no longer laboring under a misapprehension of the correct statutory maximum for Rosales-Diaz's conviction. Simply put, Tucker does not help Rosales-Diaz.

16

Given the district court judge's earlier thorough explanation of his reasons for the upward variance, it is not at all surprising that the same judge in the later § 2255 case concluded, in effect, that its 10-year sentence was still warranted even if Rosales-Diaz's statutory maximum was reduced from 20 to 10 years.

In short, the record as a whole demonstrates that the district court would have imposed the same 10-year sentence if it had known Rosales-Diaz's statutory maximum penalty was 10 years, and thus Rosales-Diaz has not carried his burden to show the required actual prejudice. Indeed, after learning the correct statutory maximum, the district court did, in effect, reimpose the same 10-year sentence by denying Rosales-Diaz § 2255 relief. Accordingly, we cannot say the district court committed any reversible error in denying Rosales-Diaz's § 2255 motion.[7]

**AFFIRMED.**

---

[7]We recognize Rosales-Diaz argues that he may later suffer collateral consequences from being "incorrectly labelled" an aggravated felon under § 1326(b). Because the district court chose not to change his 10-year sentence and that sentence remains legal, the question becomes whether that incorrect designation alone is sufficient to demonstrate actual prejudice warranting a resentencing. We conclude that it does not. In any event, at oral argument, Rosales-Diaz's counsel was pressed to acknowledge that if this Court itself concluded "there is no realistic chance [the sentence] would be different" then there would be no reason to remand Rosales-Diaz's case back to the district court, but counsel insisted that, on this record, Rosales-Diaz had shown that the sentence "may have been different." As explained above, Rosales-Diaz has not carried his burden to show his sentence may have been different.

Nonetheless, although not required and because the correction here is more in the nature of a clerical one, we exercise our discretion and instruct the district court on remand to correct clerically Rosales-Diaz's judgment to substitute § 1326(b)(1) for § 1326(b)(2), in this phrase in the judgment:
TITLE & SECTION
8 U.S.C. § 1326(a) & (b)(2)